Frances A. Kenyon
vs.
United Electric Railways Company

No. 1484.

July 20, 1929.

CAPOTOSTO, J. Miss Frances A. Kenyon, a physician of many years' practice in South County, was severely injured while in the act of boarding an electric car of the defendant company on Weybosset street, in the City of Providence, on October 12, 1926. Her claim is based upon the sudden starting of the car while she was about to step on the vestibule floor. No report of the accident was made by the crew of the car. The first knowledge which the company had of the occurrence was when the plaintiff personally brought it to the attention of the claim department about a month later.

In the plaintiff's suit for damages the defendant pleaded the general issue and the statute of limitations. To the plea of the statute of limitations the plaintiff filed a replication setting forth grounds for an estoppel based upon the defendant's affirmative and tortious conduct. The case went to the jury and a verdict for $19,000 was returned in favor of the plaintiff. The defendant moves for a new trial upon all of the usual grounds, strenuously maintaining that the verdict is against the law and that the damages are excessive.

The first question is that of liability. The case is one of clear culpability on the part of the defendant's servants. They were negligent in regard to the passenger's safety and still more negligent in failing to reasonably protect their employer's rights against any possible claim for damages. As it ultimately developed, their initial failure to properly report the accident may have set in motion a train of circumstances which, perhaps through over anxiety, influenced the conduct of those who were later called upon to consider the plaintiff's request for compensation. The defense against liability was abortive and unconvincing.

In the final analysis, the case presents a clear cut question of law with reference to the statute of limitations. Insofar as this Court is informed, the fundamental point in dispute in this case has never been determined by our Supreme Court. The ultimate decision, therefore, as to the proper rule to follow must be left to the mature judgment of a Court which, whenever justified, has not hesitated to take the position that the real intent of a statute shall not be distorted in aid of conduct it never was intended to assist or protect. In so speaking, we have in mind the claim advanced by the defendant that the theory of law followed by this Court at the trial was erroneous, and its expressed desire to argue this proposition on its motion for a new trial. Whether or not error was committed at the trial is not for this Court to say. To be influenced by any argument along this line would be arrogating a power which now rests elsewhere.

The plaintiff in person brought her claim to the attention of the defendant's authorized agent, gave him all the information which he requested, heard words of sympathetic appreciation of her injuries, was told that the

matter would be investigated and that the company "would do the right thing" by her. She returned a number of times and on at least one other occasion was assured that they "would do the right thing" by her. Meanwhile, the period of the statute of limitations was fast slipping by. She was finally asked to name a figure, and when this was done, a physical examination was requested and willingly granted. The plaintiff further states that the company's agent told her that he "would let her know" something definite after such examination, that she called him by 'phone at least two or three times and that in each instance he stated that he had been very busy, but that he would let her know in a short time; that finally she made a special trip to see this agent personally and was then informed by him that the matter was out of his hands because the time within which she might have brought suit had expired. This interview was followed by a written communication from the claim department that the plaintiff's case was a closed matter with the defendant company because of the expiration of the statutory period within which suit might be brought.

The agent with whom the plaintiff dealt was presented as a witness by the defendant. His testimony strongly tended to confirm the plaintiff's claim. His appearance on the witness stand was one of embarrassment bordering upon confusion and indicated far more closely than his spoken words what had actually happened between the plaintiff and himself.

The authorities which were cited to the Court by the parties in interest were not directly in point and seemed to be in hopeless conflict. This impression could not be more accurately confirmed because in Westerly, where the case was tried, the extensive library at the Court's command consists of an antiquated reference work, a set of Rhode Island Reports, and the General Laws of the State.

Speaking of the statute of limitations our own Supreme Court has said: "* * *that it must be expounded reasonably, so as to suppress and not to extend the mischiefs it was designed to cure. that it was intended to suppress fraud by preventing unjust claims from starting up after a great lapse of time, when evidence by which they might be repelled was forgotten or had ceased to exist; that it should not. therefore, be so construed as to encourage fraud by enabling those who through falsehood or cheat have managed for six years to keep one in ignorance of the fact that he had a cause of action, to take advantage of their own wrong-doing under a plea of the statute. * * *"

"The rule laid down by Blackstone of considering the old law, the mischief and the remedy, when applied to this statute shows that its purpose was to cut off those cases whose prosecution would or might result in fraud. *It was clearly not intended to thwart the fundamental maxim that no one may take advantage of his own wrong.*"

*Reynolds* vs. *Hennessy*, 17 R. I. 169 at page 176.

The plaintiff, an educated woman but inexperienced in legal matters, presented an honest claim to the defendant and placed confidence in the assurance given her by its authorized agent. The testimony shows that the defendant, through positive statements recklessly made, derived an undue advantage from such confidence. Its initial and repeated representation of doing "the right thing by her" of agreeing to let her know, of excusing prolonged delays by pressure of other business and again promising a report on her claim, insidiously invaded the plaintiff's right not to be misled. While a defendant has the right to protect its interests in any and every proper

way, such as by an independent investigation, by interviewing the plaintiff as often as necessary or permitted, by securing a medical examination, or the like, yet in our opinion it has no right to offer any clear affirmative inducement by which a claimant, acting as a reasonably prudent person, is misled by relying upon such inducement. This Court is of the opinion that a defendant cannot avail itself of the benefit of the statute of limitations when its own affirmative deceptive statements and conduct, whether intentional or the result of negligence or recklessness, has brought the statute to its assistance. We do not believe that the statute of limitations was intended to protect those who, after promising to "do the right thing," resort to representations which lull an innocent and injured party into a sense of security. If this be so, then a shield against deception and unfair dealing becomes a potent weapon in the hands of ingratiating individuals for the practice of chicanery. A party should not be entitled to the benefit of a statute intended as a protection against fraud when, as a result of representations made or a position assumed, inequitable consequences will result to another who, having the right to do so under all the circumstances of the case, has, in good faith, relied thereon. Morality and justice are the foundation for an estoppel in such cases.

In the case at bar, if there were such admissions, declarations or conduct intended or calculated, or such as might reasonably have been expected, to influence the action of the plaintiff, and the plaintiff honestly relied thereon, then the defendant should not be entitled to a defense which, but for its own unconscientious and inequitable conduct it never might have possessed. The jury found that the plaintiff was unjustly treated as a result of the improper conduct of the defendant. The Court is of the same opinion.

The question of damages also requires special consideration. The plaintiff was a duly registered physician and 56 years of age. The injuries which she suffered to the muscles and nerves of her back and arms were severe. To recount them, together with the incidental suffering and the long continued treatments, would serve no purpose here. In a few words, her injuries consisted of a chronic inflammation of both shoulder joints (bursitis), with special damage to the deltoid flexor muscle and brachial plexis nerve of the right arm, resulting in a partial paralysis of the right hand and, principally, of the first and second fingers of that hand. As a consequence of her injuries she is seriously handicapped in her professional work, especially in the use of surgical instruments. Her doctors stated that her condition is permanent. Dr. Cutts, who testified for the defendant, said that he would not say that she was shamming, and further stated that there was no way of telling whether she was going to get well or not.

The plaintiff testified that her professional work was represented by a book income of some $4,000. When asked how much she actually collected, she admitted a shrinkage of about one-half, which brought her yearly income in actual cash down to about $2,000. The plaintiff further claimed that for the first year following the accident her income was about one-third of what it had previously been and that thereafter her loss in earnings was between one-third and one-half of her actual income before the accident. At her age the plaintiff has an expectancy of life of over sixteen years. The present value of the dollar under such expectancy is a little over $11.

The jury awarded her $19,000. Was this sum excessive?

The plaintiff's actual expenditures,

including transportation, assistance and doctors' bills in consequence of the accident, amount to some $3,000. If we give the defendant the benefit of any doubt and say that plaintiff's earning capacity is diminished only one-third by reason of the accident, she has suffered an estimated loss of over $7,300. Actual expenses and dimunition of earnings amount, therefore, to more than $10,300. How much should be added for the suffering and deformity resulting from the accident is difficult to say. The sum of $3,700 seems a reasonable allowance for this item of compensation. Damages in the total sum of $14,000 are reasonably fair to all parties concerned.

The Court desires to express its appreciation of the assistance which it received from both Mr. Greenlaw and Mr. Sweeney. This Court is of the opinion that the careful work of preparation and able presentation of his case by counsel for the defendant before the Court and jury were nullified by the peculiar circumstances of the case.

If the plaintiff, therefore, within five days after the filing of this rescript, remits all of said verdict in excess of $14,000, a new trial is denied, otherwise it is granted.

For plaintiff: Ralph M. Greenlaw.

For defendant: Clifford Whipple and Earl A. Sweeney.